UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re: MAYWOOD CAPITAL CORP.,

Debtor.
-------------------------------------------------------x
In re: BODDEN MORTGAGE LITIGATION

This Document Relates To:

ALL ACTIONS.
-------------------------------------------------------x

Master File: 07 Civ. 3128 (LTS)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE BODDEN DEFENDANTS' MOTION FOR AN ORDER DETERMINING THESE ACTIONS TO BE NON-CORE AND WITHDRAWING THE REFERENCE**

Plaintiff John S. Pereira, (the "Trustee"), as Chapter 11 Trustee for Maywood Capital Corporation ("Maywood") and the jointly-administered debtors in whose behalf these adversary proceedings are brought, submits this memorandum in opposition to the motion of defendants Bodden Funding Corp. ("Bodden") and Mark, Jay and Orli Irgang (the "Irgangs" and collectively with Bodden, the "Bodden Defendants"), for an order (a) determining that these adversary proceedings are not "core" proceedings under the Bankruptcy Code and (b) withdrawing the reference of these adversary proceedings from the Bankruptcy Court.

The Bodden Defendants' argument that these proceedings are non-core is frivolous and should be denied summarily. As will be demonstrated below, these cases are nothing more than garden variety fraudulent conveyance cases, in which the Trustee seeks to avoid the transfers of certain mortgage liens as against the original lienors, BRT Realty Trust ("BRT") and Kennedy Funding Inc. ("Kennedy"), and as against Bodden as those lienors' assignee and subsequent transferee. As such, these proceedings are clearly "core" proceedings as specifically provided in 28 U.S.C. § 157(b)(2)(H).

To the extent the Bodden Defendants seek a withdrawal of the reference, their motion

should be denied without prejudice to its renewal at the conclusion of pretrial proceedings. The Trustee recognizes that (a) in addition to seeking the equitable remedies of avoidance and preservation of the BRT and Kennedy liens for the benefit of the debtors' estates, the Trustee has sought, in the alternative, monetary relief equal to the value of the interests fraudulently conveyed and (b) the Bodden Defendants have demanded trial by jury on this alternative remedy, which the Bankruptcy Court cannot conduct without the unanimous consent of the parties. However, it by no means follows that the reference must be withdrawn at this pretrial stage of these adversary proceedings.

As the Bodden Defendants recognize, this Court has the discretion to maintain the reference to allow the Bankruptcy Court to conduct the pretrial phase of these cases, and then determine whether there is any need to withdraw the reference to conduct a jury trial. In addition to the always present possibility of settlement, the Bankruptcy Court may resolve the dispute on a dispositive motion (including, conceivably, on the motions to dismiss that the Bodden Defendants have indicated they will make after this withdrawal motion is decided, but more likely on the Trustee's summary judgment motion at the close of discovery). Further, because the Trustee is only seeking monetary relief as an alternative to his preferred equitable remedy of avoiding the defendants' mortgage liens and preserving them for the benefit of the debtors' estates, the Trustee is likely, prior to trial, to elect to forgo his alternative claim to monetary damages, and seek only equitable relief, thus avoiding altogether the need for a trial to a jury.

Finally, even if this Court ultimately must withdraw the reference and conduct a jury trial, allowing the Bankruptcy Court to conduct the pretrial phase of the cases will promote the sound and efficient administration of these cases in two ways. First, as a general matter, and without impinging on defendants' right to a jury trial in any way, maintaining the reference will

forster and implement the division of jurisdiction and responsibility for administering bankruptcy cases created by this Court's Standing Order of Reference. Second, in the context of this particular litigation, it will allow Judge Drain, who is already familiar with the underlying facts of the jointly administered debtors' cases as well as these cases from other litigation involving the Trustee and the Irgangs, to supervise the pretrial process, without burdening this Court to duplicate his familiarity with the underlying facts until, and unless, it becomes necessary to conduct a jury trial.

**STATEMENT OF FACTS**

Because the Bodden Defendants' memorandum does not provide a full description of the background of this controversy, the salient facts will be briefly set forth.

The Trustee is the Chapter 11 trustee for Maywood and its affiliated, jointly administered debtors, (the "Maywood Debtors") most of which are single-asset corporations that hold or held title to commercial or residential buildings. The principal of the Maywood Debtors was Joseph Greenblatt. At the time of the Chapter 11 filings, Greenblatt and the Maywood Debtors had been placed in receivership by the New Jersey Superior Court on the application of the New Jersey Attorney General, who alleged that Greenblatt had defrauded numerous individual investors out of millions of dollars by selling them notes that were ostensibly to be secured by mortgages on the Maywood Debtors' real estate. For the most part, the investors' mortgages were never granted or never recorded, or were released without the investors' permission. Greenblatt used the money fraudulently obtained from investors, partially to meet his obligations to earlier investors, and partially to meet his liability to pay criminal restitution to victims of a prior "Ponzi" scheme for which he had been convicted and was awaiting sentencing in the King County Supreme Court.

Approximately a year prior to their bankruptcy petitions, certain of the Maywood

Debtors on whose behalf these adversary proceedings are brought (the "Debtors") held title to valuable real properties, located in Upper Manhattan and the Bronx. The properties were encumbered by mortgages securing borrowings from unaffiliated lenders, including BRT and Kennedy, and by recorded and unrecorded mortgage liens of some of the individual investors allegedly defrauded by Greenblatt. Perhaps as a result of the diversion of funds to pay Greenblatt's criminal restitution, the Debtors were in arrears on certain of their mortgage obligations, and BRT had commenced foreclosure proceedings. At this point, the Irgangs, who were already involved in a real estate joint venture with Greenblatt, allegedly offered to purchase the properties. By the Irgangs' own admissions, Greenblatt was unwilling to sell the properties and instead the Irgangs purchased stock representing a fifty percent equity interest in the corporate Debtors which owned the properties, and entered into Stock Purchase Agreements and Shareholder Agreements with Greenblatt. The Irgangs also became officers and directors, and thus "insiders," of each of the Debtors.

At some point, either prior to or shortly thereafter, the Irgangs became aware that the New Jersey Attorney General was investigating Greenblatt and the Maywood Debtors. In their capacities as corporate officers of the Debtors, the Irgangs conveyed title first to a fifty percent fee interest in each of the real properties, and then the remaining fee interest, from the Debtors to limited liability companies entirely owned and controlled by the Irgangs.

Having thus taken title to essentially all of the Debtors' assets, the Irgangs next dealt with the BRT and Kennedy mortgages. Rather than refinancing and satisfying these mortgages, the Irgangs purchased and took assignments of these BRT and Kennedy mortgages through another of their controlled entities, Bodden. Bodden then continued the foreclosure actions that BRT had commenced, which would have had the effect of "wiping out" the junior recorded as well as unrecorded mortgage interests of the individual investors that Greenblatt had granted on the

properties.

After the New Jersey Superior Court entered its receivership order against the Maywood Debtors and Greenblatt, the Maywood Debtors filed Chapter 11 proceedings. Very shortly thereafter, the Trustee was appointed. Just prior to the Trustee being appointed, the Irgangs made motions to dismiss the petition of certain of the Debtors which are plaintiffs in these adversary proceedings, arguing that they were those Debtors' officers and directors and that the petitions were unauthorized. The Trustee was appointed and the motions were withdrawn. Shortly, thereafter the Trustee sued the Irgangs and their corporate entities, alleging that the transfer of title to the Debtors' real properties were fraudulent conveyances, seeking to recover those properties for the estates. (*See* Exhibits A through H of Campo Affidavit in Support of Opposition). In those actions, (the "Real Property Fraudulent Conveyance Actions") the Trustee sought a preliminary injunction to have his managing agent appointed to manage the real properties pending the resolution of the fraudulent conveyance litigation. This motion was resolved at a conference before Judge Drain, at which it was agreed that the Irgangs would continue to manage the properties pendent lite, subject to the oversight of the Trustee's accountant.

Pretrial proceedings in the Real Property Fraudulent Conveyance Actions, which have been consolidated for pretrial purposes, have continued in the Bankruptcy Court. The parties have completed documentary discovery, and have exchanged expert reports of their real estates appraisers, which, in the Trustee's view , reconfirms that the transferred real properties had and have significant value to the Maywood debtors' estates. Depositions and expert discovery are continuing, and the Trustee anticipates that Judge Drain will be able to try the case in a matter of months.

In February, 2007, with the deadline for filing "avoidance" actions

approaching, the Trustee filed the adversary proceedings which are now before this Court on the motion to withdraw the reference. These adversary complaints do not simply name Bodden, but sue BRT and Kennedy, and seek to avoid the original grant of the BRT and Kennedy mortgages as fraudulent conveyance for which the Debtors did not receive adequate consideration.[1] Bodden is sued as a subsequent transferee of the avoidable BRT and Kennedy mortgages, and the Trustee alleges that the Bodden and Irgangs, who were insiders of the debtor/mortgagees, did not take the assignment of these mortgages in good faith and without knowledge of their avoidability. *See* 11 U S.C.§ 550. The complaints also seek to equitably subordinate any claim Bodden may have under the transferred BRT and Kennedy mortgages to the claims of other creditors who are not insiders of the Debtors. *See* 11 U.S.C. § 510.

**POINT I - THE ADVERSARY PROCEEDINGS ASSERT CAUSES OF ACTION THAT ARE "CORE" CLAIMS UNDER THE BANKRUPTCY CODE**

Section 157(b)(1)(H) of Title 28 of the United States Code specifically provides that core proceedings include, but are not limited to, "proceedings to determine, avoid or recover fraudulent conveyances." Under the applicable sections of the Bankruptcy Code, pursuant to which these adversary proceedings are brought, the Trustee may sue to avoid fraudulent transfers, or recover their value, from both the original transferee, such as BRT and Kennedy, and any subsequent transferee, such as Bodden. *See* 11 U.S.C. §§544, 548, 550, and 551, and the applicable provisions of the New York Debtor-Creditor Law, §§273, 274. 275 and 276. Under the plain language of the Judicial Code quoted above, these adversary proceedings are "core" proceedings. The issues that Bodden seeks to raise as to whether the real properties underlying the challenged mortgages were still "property of the estate" at the time of the

[1] The Irgangs were also named as individual defendants based on claims they had made in the pending litigation over the fee interests, that Greenblatt had also granted them mortgages on the properties.

bankruptcy petitions is simply a "red herring" and disingenuos . By their very nature, fraudulent conveyance actions seek the recovery of property (or the monetary equivalent thereof) which was transferred out of a debtor's estate prior to the filing of the petition in bankruptcy, and yet the Judicial Code specifically provides that fraudulent conveyance actions are "core". The Court should summarily reject the Bodden Defendants' arguments to the contrary.

**POINT II - THE COURT SHOULD NOT WITHDRAW THE REFERENCE AT THIS PRETRIAL STAGE OF THE ADVERSARY PROCEEDINGS**

Even if these cases were not core proceedings, the Court need not withdraw the reference from the Bankruptcy Court at this preliminary, pretrial stage of the litigation based on the Bodden Defendants' demand for trial to a jury. To the contrary, this Court has routinely allowed the Bankruptcy Court to conduct the pretrial phase of even non-core adversary proceedings, and deferred any withdrawal of the reference until the case is ready to be tried. *See, e.g. Hasset v. Bankohio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748 (S.D.N.Y. 1994):

> While it is clear in this circuit that the bankruptcy court may not conduct a jury trial in this non-core proceeding, it does not necessarily follow that the reference must be withdrawn at this time. The bankruptcy judge may still adjudicate pre-trial matters not requiring the "final order or judgment" reserved to the district court under § 157(c)(1). Presumably the adversary proceeding has not yet progressed beyond the initial stages of litigation. Judicial efficiency and uniformity will be promoted by allowing the bankruptcy court, already familiar with the underlying action, to manage the proceedings until the case becomes ready for trial, at which time removal to this Court will be required.
>
> The adversary proceeding is a non-core proceeding in which the defendant has the right to a jury trial. Nevertheless, for reasons of efficiency and uniformity, the motion to withdraw the reference is denied, with leave to renew once the case is ready for trial.

*Id.* at 763-64 (internal citations omitted); *see also Enron Power Marketing v. Holcim, Inc. (In re Enron Corp.)*, 2004 WL 2149124, *3 (S.D.N.Y. Sept. 23, 2004) ("Even if this action is a non-core proceeding, the Bankruptcy Court may still adjudicate pretrial matters not requiring the entry of final orders or judgments."); 28 U.S.C. § 158(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."). As shown in Point I, supra, these proceedings are core and a fortiori, the reference should not be withdrawn at this pretrial stage simply because of the Bodden Defendants' jury demand.

The court in *Enron Power Marketing v. Holcim* also considered, and expressly rejected, an argument that the right to a jury trial compelled withdrawal of the reference, holding that "[c]ourts in this Circuit have held consistently that a party's entitlement to a jury trial alone is insufficient to compel immediate withdrawal of the reference. Again, with regard to a jury trial, withdrawal at this stage of the proceeding would be premature." *Enron Power Marketing*, 2004 WL 2149124 at *4 (citing cases). Numerous courts within this jurisdiction have reached the same conclusion. *See*, *e.g.*, *Space Sys./Loral Inc. v. Int'l Launch Servs., Inc. (In re Loral Space & Communications)*, 2004 WL 1586466, *2 (S.D.N.Y. July 14, 2004) ("While the issue is always case specific, often courts in this District have found it appropriate to defer withdrawing the reference until a case is trial ready."); *In re Formica Corp.*, 305 B.R. 147 (S.D.N.Y. 2004) ("While the plaintiff has a right to a jury trial, such a right does not compel withdrawing the reference until the case is ready to proceed to trial."); *Gucci by Armstrong v. Gucci*, 1997 WL 122838, *1 (S.D.N.Y. Mar. 17, 1997) ("While there is no question that this case must return to the District Court if and when there is a jury trial, at the present infant stage of the proceeding the issue of withdrawal is discretionary and turns largely on considerations of judicial economy.") (added emphasis); *In re Ames Dep't Stores*, 190 B.R. 157, 162-63 (S.D.N.Y. 1995) (finding greater efficiency in allowing the matter to remain with the bankruptcy judge until it is trial

ready); *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y.1992) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme.").

In considering whether a bankruptcy court should oversee pretrial matters and only later transfer the case to the district court for trial, "courts should take into account the following three factors: '(1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court has familiarity with the issues presented.'" *In re Times Circle East, Inc.*, 1995 WL 489551, *3 (S.D.N.Y. Aug. 15, 1995). The party seeking to withdraw reference "must demonstrate that withdrawal is in the interests of judicial economy and that it will be prejudiced by having the bankruptcy court oversee pretrial matters." *Enron Power Marketing Inc. v. City of Santa Clara (In re Enron Power Marketing Inc.)*, 2003 WL 68036, *7 (S.D.N.Y. Jan. 8, 2003). Applying these considerations to the instant cases should lead the Court to allow the Bankruptcy Court to conduct the pretrial of these cases.

On the issue of whether the cases will ultimately go to trial, the obvious point can be made that most cases settle before trial. In addition, in this particular case, the Bodden Defendants have advised the parties and the Bankruptcy Court that they intend to move to dismiss the complaints as soon as this motion to withdraw the reference is decided. While the Trustee obviously doubts this motion will be meritorious, and may actually be frivolous, it should nonetheless be decided in the first instance by the Bankruptcy Court in core cases such as these. Further, while fraudulent conveyance actions obviously raise factual issues as to valuation and solvency, the Trustee does not discount the possibility that he will be able to move successfully for summary judgment at the close of discovery.

More importantly, the Trustee may well be in a position to amend his complaints and

move to strike the Bodden Defendants' jury demand before these cases go to trial. In the adversary complaints, the Trustee seeks, in the alternative, damages equal to the value of the interests fraudulently conveyed, and under Granfinanciera v. Nordberg, 492 U.S.33 1984), the Bodden Defendants concededly have a right to a jury trial on this monetary damage claim. However, the Trustee also seeks the equitable remedies of avoidance and preservation of the transfers. If, as he anticipates, the Trustee succeeds in recovering the Debtors' real properties from the Irgangs in the Real Property Fraudulent Conveyance Actions, he may well elect to drop his alternative claim to damages in theses actions, and pursue only the equitable claims of avoidance and preservation of the mortgages, which do not give rise to a right to a jury, in a trial that could be conducted by the Bankruptcy Court. *See e.g.. Treinish v. Glazer (In re Glazer)*, 248 B.R. 528 (Bankr. N.D. Ohio 2000); *Millbury Nat'l Bank v. Palumbo (In re Palumbo)*; *Stratton v. Garcia*, 2007 WL 512506 (E.D. Cal. Feb. 13, 2007); and *Bennett v. Genoa AG Ctr., Inc. (In re Bennett)*, 154 B.R. 126, 136 (Bankr. N.D.N.Y. 1992).

While the Trustee would not expect the need for "protracted" discovery in these cases, a reasonable amount of discovery will be necessary, and it makes more sense for whatever discovery is necessary in these actions to be conducted by the Bankruptcy Court, with its familiarity with these cases, and it's expertise in issues of fraudulent conveyance law, rather then by a Magistrate Judge of this Court. This is particularly so in this case, in which Judge Drain is already familiar, not only with the general facts of the Maywood cases, but also with the litigants and transactions that are at issue in these adversary proceedings. Thus, the "interest of judicial economy" will be served by allowing the Bankruptcy Court to conduct pretrial discovery.

Finally, the interest of the Bodden Defendants will not be prejudiced in any way by having the Bankruptcy Court conduct the pretrial phase of theses proceedings, since their right

to a jury trial will be fully protected by allowing them to renew their motion at the conclusion of the pretrial phase if any issue triable to a jury remains in the case.

## CONCLUSION

The Court should (a) determine that these cases present "core" issues under the Bankruptcy Code, and (b) irrespective of how it rules on that preliminary issue, deny the motion to withdraw the reference, without prejudice to the Bodden Defendants' right to renew it if any issue triable by right to a jury remains at the conclusion of pretrial proceedings before the Bankruptcy Court.

Dated: May 31, 2007
New York, New York

Respectfully submitted,

DREIER LLP

By: ***s/John P. Campo***
John P. Campo (JC-5241)
John S. Kinzey (JK-4951)
499 Park Avenue
New York, NY 10022
Tel: 212-424-8000

Counsel for Plaintiff John S. Pereira,
Chapter 11 Trustee